Our next case is ROSALES v. United States Mr. Webb May it please the Court, this appeal turns on the fact that truth should defy presuppositions. Judge Block made three errors of law based upon two presuppositions for which there is  The first presupposition is that there was some kind of a transfer of beneficial ownership of parcel 04 to the tribe, and yet there is not one piece of evidence indicating that that ever occurred. The second presupposition is that there was then some kind of a decision on the merits of that transfer to the tribe. Again, there is no evidence in the record that any decision on the merits of such a transfer ever occurred. That resulted in three errors of law. First, there was a dismissal of our client's breach of fiduciary duty claims under the statute of limitations without any evidence that there was a claim. What do you say the government did that breached its obligations to your clients and entitled your clients to recover damages from the government? What was it that the government did that you say breached their fiduciary obligation? Three things, Judge Friedman. Actually, four things, but three of them were in the Jones v. U.S. case that Judge Kaczynski decided twenty-some years ago. First, the government failed to enforce the deed, the deed to parcel 04 that never was transferred to the tribe. Second, they failed to block the eviction of our clients years after the infringement. I don't understand this. How would the government do this? The dispute was between you, your clients as I understand it, and the tribe. The government doesn't sit around, the federal government doesn't police relationships between a tribe and its members, does it? Actually, it does, Your Honor, in several important respects, particularly with the use of fracturary property rights that individual Indians have versus tribes that get subsequently recognized, particularly west of the Mississippi, particularly in California, and particularly in San Diego County where we've got thirteen different tribes that had never been recognized until the modern times. You have a tension between those tribal governments that subsequently get recognized and the individual Indians that are descendants of thousands of years of history of people living in the neighborhood. In this instance, like in Coast Indian Community, you had property taken into trust by the federal government on behalf of individual Indians, and the federal government has its highest exacting fiduciary duty to protect those Indians. What should it have done? Should it have sued the tribe? Should it have written them a letter? Should it have called them? What should the government have done, in your view, that it didn't do? What specifically? As in Jones v. United States, as Judge Kaczynski had ruled, had there been a timely claim made, like ours, within six years of the first infringement of the rights to use that property, the federal government should have enforced the deed, which means it would have had to tell the tribe, you don't have the property, and the government should have followed the memoranda of the solicitors for 40 years, going back to the mid-thirties. Of course, that's not before us. What we're talking about is, has there been a timely filing? What action triggered accrual, in your mind, of the statute of limitations? Contrary to how Judge Block ruled, the triggering events here occurred between November 12, 1992, and November 12, 1998, the filing of the original claim. We specifically allege, in many different locations in both the original complaint and the amended complaint, damage to the use of fracturary property rights, and the severe nature of that, leading to the conclusion we've actually alleged that it's up to $800,000. That is alleged in the record between pages 492 and 508. Particularly, if you want a singular event that triggers this, is when the six mobile homes that have been purchased with the $600,000 HUD grant were removed from the property. That was done by the tribe, was it not? Not the federal government. The mobile homes were removed by the tribe, but the federal government was put on notice by our clients that the residence that they had in that mobile home was being moved off the property for which they had a right to keep the house. But the problem is that, as the Court of Federal Claims found, the tribe had gained beneficial ownership in 1982. That's more than 10 years before what you're talking about. That's the missing piece of evidence that Judge Block couldn't find in the record. What's missing? It's clearly a record, isn't it? No, not at all, Your Honor. Quite to the contrary. The record consists of the deed which was granted in 1978 before the tribe ever existed. What's missing, according to the memorandum of the solicitor's office, as footnoted in Justice Breyer and Justice Stephenson's portions of the Carcheri decision, is there's no transfer of that beneficial ownership to the individual Indians, as found in the Coast Indian community case, to the tribe. And if you're going to have that transfer take place, there has to be, as the memorandum of the solicitor's point— But the tribe asserted jurisdiction over, quote, all lands now within the confines of the village in 1982. Wasn't parcel 4 within the confines in 1982? Not at all, Your Honor. That's one reason we attach the plaque maps from the County of San Diego that match up with what the deed says. There is nothing that shows that the tribe ever exercised jurisdiction over parcel 04. It was within the confines, however, wasn't it? No, Your Honor. At page 429— Rosales was on the election board that approved that. Rosales was on the election board that certified the results of the vote on the Constitution, which took possession of the lands, including parcel 4, right? No, Your Honor. At page 429, the memo from Ms. Persala at the Sacramento office of the BIA clearly says that they have no record, as of 2000, that parcel 04 was ever within the confines of the Honolulu Indian Village. The only piece of property that got into the confines of the village was parcel 05, donated by the Catholic Church. We are not making claims on this appeal as to parcel 05. Our claims are limited only to parcel 04. There is nothing in the Constitution, nothing in the government's memoranda, not one piece of evidence that the tribe ever claimed to exercise jurisdiction over parcel 04 until they file an environmental assessment in February of 2001, three years after we've already filed the initial claims. And it is at that point that our supplemental claims come into existence as the tribe starts to then try to exercise control over parcel 04 in 2001. By 07, they then take the drastic act of evicting our clients at gunpoint. So at that point, we then amend the claims, file the new action before the Court of Claims as a supplemental claim. And therefore, we have the right, as Judge Block found, to have relation back. Is there a basic dispute on the merits whether your clients or the tribe has the beneficial ownership of parcel 04? Is that the basic underlying dispute on the merits? Yes, Your Honor, but I don't think there's a dispute in the evidence. Haven't several other courts found differently than what you're telling us now? No, Your Honor. Other courts found in the exercise of equity that they did not want to make a decision on the merits because the tribe was not present. Because prior to the Supreme Court's decision in Carcheri, there was a colorable claim, those courts found, that the tribe could say they had some beneficial ownership. However, after Justice Thomas' opinion, joined by, I believe it's seven other of the justices, in Carcheri, there is now no colorable claim, and it is a frivolous claim for the tribe to try and assert that they had some beneficial ownership in parcel 04 versus 04. Even if, as you're correct, 04 is not specifically mentioned as part of the village, it's still incredibly notorious. Isn't it a very open transfer of all these lands to the tribe, which, as I suggest, Rosales was part of, and courts have repeatedly acknowledged that that occurred in the 80s? Isn't that your difficulty? No, Your Honor. The courts acknowledging this, as you say, is at best dicta because the decisions were all Rule 19, Rule 12 type decisions that are not decisions on the merits. I'm kind of asking a different question. The courts have all ruled, and that's a matter of record. We can just go look at it. What I'm asking you is there's 30 years now that people have been completely of the understanding that all this land was given to the tribe in 82. Why wasn't that notorious open display enough to put you on notice that if you had a different claim, you should have filed it at least in the late 80s? Because there is no evidence that the tribe exercised control over Parcel 04 versus Parcel 05, like the Mississippi Choctaw and the Chippewa claims. What do you mean have to? If it was given to them, what did they have to do to exert control? That's our point, Your Honor. It's a presupposition Judge Block made that it was given to them. There's not one piece of evidence that shows it was given to them. The solicitors at Department of Interior say to show that it was given to the tribe as opposed to those individuals. The individuals have to consent to a further transfer. In fact, Ms. Bacon's memo, which we made in the exhibit to the complaint in 1993, evidences what the procedure was supposed to be. Before the tribe could ever get recognized, the individual Indians had to have some property to live on. So the government takes the land into trust for the individual Indians. Just as the memorandum of the solicitors then point out, they have to get together and get consent of that majority of the 6 or 7 families that were living there for the 25 years at any point in time once the tribe gets recognized in the 80s to transfer that individual beneficial interest to the tribe. That's the missing piece of evidence that Judge Block didn't have, and that's why his decision, both on the statute of limitations and the issue of preclusion, is erroneous. Let's hear from the other side, Mr. Webb. Thank you. Thank you. I'd like to reserve the remaining time. Certainly. Certainly, certainly. Mr. Stockman. May it please the Court. My name is Robert Stockman, here on behalf of the United States. It is open and notorious that the tribe owns this land. Where is the evidence that Parcel 04 was transferred to the tribe? That's what Mr. Webb contests is missing. So the land was taken into trust for the Homeland Indians of Half-Blood, understood to be the community at the time. The Constitution then authorized the tribe to exercise full ownership over that land. It was a majority vote. But he's saying, you've listened, he said, yes, Parcel 05, no, Parcel 04. Can you point us to somewhere in the record where Parcel 04 is part of the village in 1982 and taken in beneficial trust? The only, yes. What is it? That's what we need to see. The only land in trust in 1981, when the Constitution was authorized, was Parcel 04. It is the only land that could have been at issue in that Constitution. And we know that the Constitution says the land now within the Homeland Indian village. What document in the record supports what you just said? So the deed in the record for Parcel 04 was in 1979. The deed for Parcel 05 was in 1982. And the Constitution is in 1981. The only land in trust was Parcel 04. I'd also like to emphasize that this is not an argument that was ever raised or presented to the trial court in any manner. In fact, the earlier complaints in this case, in 1998 and 1999, discussed solely the tribe's land, the tribal hall, the tribe's reservation, trespass on the tribe's land. His earliest complaints all discussed the tribe's property. So it's simply well-established in the record. The land at issue is the tribe's, and he recognized that when he purported to represent the tribe. I'd also point out that to the extent he's arguing, well, the language in the first complaints in 1998 and 1999 isn't about that, isn't about that land, isn't about Parcel 04. Excuse me. As I understand, what we're talking about here is not a traditional title of the land, but the beneficial ownership of the land. How does one find out who has the beneficial ownership of land? Is there any record of titles to it or records of beneficial ownership? Or is it sort of an equitable concept? You look around and you say, well, I think that person is the beneficial owner. So the first thing you do is, we took the land into trust for all the Honolulu Indians. That's a half a block or more. And then the Constitution allowed the tribe to organize. No, no, no. Let me change my question to you. Suppose two of us are Indians, and you claim the beneficial ownership of a particular parcel, and I want to buy it from you. How do I find out whether or not you have the beneficial ownership? I gather I can't go to some recorder of deeds office and look it up. So you can't in this case. Now, if it were an allotment, if he had an allotment, it would be recorded in his name. But he doesn't elect that he has an allotment. And in fact, in prior cases, the United States has thoroughly explained why he can't. Are there written records showing the beneficial owners of property held in trust for Indians? No, there's not going to be a written record that says that this individual has, but part of that is that there's no conception of the individual having this kind of beneficial ownership, contrary to a tribe that's organized on the land. I'm not aware of any case where the tribe's organized on the land has taken possession of it, and then an individual has a separable beneficial ownership interest. Who owns a house that sits on some of this land? Does the individual Indian own it, or does the tribe own it? That will depend on tribal law. And here, he had a hearing before the tribal court, and the tribal court found that it was the tribe's land, and he was evicted. The statement that there's never been a hearing on the merits simply reads out the tribal court. It also reads out Rosales 7, in which the Southern District of California did find that the tribe owned the land, and then it was affirmed on appeal on the basis of the tribe being a necessary and indispensable party, but it has been considered thoroughly on the merits. What do you do with the document at page 429, where the BIA official says they have no record of this parcel being identified as the village? So that electronic mail is from Ms. Fascio, who works in the Realty Office. And what she was stating is that in the Realty Office, they don't have documents establishing that issue. But that doesn't mean every document within Interior. There are actually numerous documents within Interior that when it's gone to the merits in other courts, such as in Rosales 7, were presented, added to the record, that thoroughly established that Interior does have documentation that this was taken into trust on behalf of the community and then held in trust on behalf of the tribe. Why isn't that in our record? In large part because he never disputed this below. I mean, we raised this issue. We specifically said the tribe started serving ownership in 1981. We recognized it. And his response to that was, well, the statute didn't hold because of the Indian Trust Accounting Act, and there's a continuing claim, and I didn't suffer damage until 2007. But he never contested that fact. And this is exactly when waiver is most important. When someone fails to dispute a factual issue before the trial court and then argues that the record is insufficiently robust, on appeal for the first time, it's impossible for us to try to address these new arguments as thoroughly as the court might like. And although the record is sufficient, here he really failed to ever raise this below. And he's actually abandoned the vast majority of his arguments because the trial court quite correctly walked through how this court's precedent forecloses them all. There's something that I just don't understand about this case, which is, in 1978, the Pass No. 4 was conveyed to the United States, and this is my quote, in trust for such Jamul Indians of the half degree or more Indian blood as the Secretary of the Interior may designate. So, when the Secretary took the property in trust, he took it in trust for designated individual Indians. Is that correct? Not exactly, Your Honor. He took it in trust and then... Well, I don't understand. That's what it sounds like. Why isn't that correct? So, when the Constitution was ratified, it was taken into trust for the community of Indians that were half-blood or more, living on the land, the Jamul Indians. And then when the Constitution was ratified, he permitted the tribe to exercise authority over the land. I mean, that was a majority vote. But once the tribe was organized and he permitted it, was he still holding the land in trust for the individual half-blood Indians? No. It was held in trust for the tribe from that point forward, and that is how it's been done with numerous other tribes. And the deed is never re-recorded at that moment. There's no memoranda or any precedent suggesting it has to be re-recorded. The precedent he's referring to is cases where we take the land into trust and the deed originally reads, for the Jamul tribe, and the tribe doesn't yet exist. That, we don't believe... That is what the memoranda says is improper. What you have to do is take the land in trust for all Indians of one half-blood or more, and then you allow them to organize and assert control over the reservation. As I understand, your argument is that when the tribe organized itself, that terminated the trust? There was never trust for the individuals. It was always a trust understood to be for the community of half-blood Jamul Indians. It doesn't say that, does it? No, but it's worth remembering... A trust for such Indians of one half-degree of blood as the Secretary may determine. As it may designate. And the designation is the authorization of the Constitution asserting control, in which the half-blood Jamul Indians who are resident on the reservation were the only allowed voters. There were 23 of them. Ms. Garotha Rosales was not one of them. The other plaintiff, Ms. Togary, was not one of them. The 23 of them voted unanimously to allow the tribe to assert full control over Parcel 04. Aren't there two events going on here? The initial event is the Secretary taking a beneficial ownership on behalf of the Indians of half-blood, etc., in accordance with the Act. And then, at a subsequent point in time, then the tribe becomes organized and recognized, and then the Secretary recognizes the tribe as having ownership, and then the beneficial interest, if you will, transfers over. Yes, Your Honor. I mean, the transfer may not be the right word, but the point is, and I'm trying to address the concerns raised by Judge Friedman, because I think he's correct in the way he's reading this, is that there really are two separate events here. One event where there is a beneficial ownership on behalf of individual Indians, and a subsequent event that results in ownership on behalf of the tribe. Am I correct? I think that's basically correct, and I apologize. I may not have understood the question. The issue, though, is that occurred in 1981, and the way that it has always been done is for there to be a vote on the reservation in which they assert. Again, once that happened, I take it the trust continued, but the trust was now not for the benefit of individual Indians, but for the benefit of the tribe? Yes, Your Honor. And it was recognized as such by everyone involved, and once again, if this had been raised... I don't understand how a trust that began for individual Indians suddenly became a trust for the benefit of the tribe. Well, the IRA is structured that way, that land can be taken in trust, and individual Indians, it's not exactly a clear concept in the sense that it can be taken in trust for Indians of one-half, member Indians of one-half blood or more. But it's not as though each one has a lot more right. Did I understand you to just say that the statute, the Indian Act, there's something in there that permits the shift in the trust? It allows the organization of the tribe to then exert control over the land, and that is exactly... But does it provide in any way that the trust should change to instead of being a trust for the Indians, it's now a trust for the tribe? It clearly foresees that eventuality, in that it defines a tribe as being all the Indians resident on one reservation, and then it sees their ability to organize and become a tribe running the reservation. So yes, it does foresee that. It's worth emphasizing, though, that it's not as though the IRA recognizes or specifies... I mean, one of the dilemmas here is I still don't quite understand what statute is providing Mr. Rosales with the right he's alleging here, of his ownership right, and that somewhat confuses things. What is the effect of carceri on all of this? First, it has no effect, but if it did have an effect, the proper time to bring the suit would have been in 1979 when the tribe was... Well, to me it seems to me it has no effect because it deals with a different definition of Indians, doesn't it? It deals with Indians in a tribe that is now federally recognized, and the only question in the case was does now mean when the statute was enacted or does now mean when the federal recognition took place? And that seems to me... That goes to the merits, whereas this case goes solely to the question of whether the Court of Federal Claims properly rejected jurisdiction. That's exactly correct, Your Honor. It goes to whether members now in a tribe under federal jurisdiction, we took this land into trust on behalf of Indians of one half blood or more. I'd like to emphasize, too, there really is a problem here with the complaints. The 1999 and 1998 complaints all allege that he is there on behalf of the tribe protecting the tribe's land and protecting it from alleged outsiders. It entirely had to do with the electoral disputes it issued in. That case was stayed because all of that was resolved before the IBIA and the D.C. District Court and the D.C. Circuit Court. And then the state was lifted in 2007 when Mr. Rosales lost all of those cases. It was only in 2008 that he filed a complaint alleging that he had a beneficial interest that trumped the tribes. It was the first time he alleged anything along these lines. If you look at the complaints from 1998 and 1999, not a single one of them mentions the 1978 deed. I mean, they don't have anything to do with the facts that this case is now allegedly about. And they have nothing to do with what's going on. And he's trying to relate back to that complaint, the earlier complaints. And what's truly astounding is he is now asserting an interest directly contrary to the plaintiff he allegedly represented in that earlier complaint. Whatever relation that means, it can't be that a party can come and assert the rights of a tribe in one case and then relate back to that complaint when he's trying to defeat the rights of that same tribe. And for that reason alone, without relation back to the 1998 complaint, he can't be timely. He acknowledges that he had noticed by 2001. The 2008 complaint is more than six years later. The tribe court didn't rule on it. He said, I assume arguendo, but of course it would be even more untimely if he did relate back to this. And so for that reason alone, the conduct, I mean, this case, the trial court's judgment should be affirmed. For all those reasons, unless there are any further questions, we'd like this court to affirm. Mr. Webb, why don't you address that last point first? The 2008 complaint is the one where Mr. Rosales asserts his own interest. Before that, he was really asserting the tribe's interest, wasn't he? A couple of things, Your Honor. Mr. Stockman, I don't think, carefully read the original complaints as carefully as he thinks. We pled both tribal claims and individual claims. The tribal claims, as this court has many times determined, if you have to go through administrative exhaustion of your remedies, going up the chain, particularly in an Indian law case where the issue is, who's the leadership and the membership of the tribe, all those claims had to be resolved first, which is why the original case got stated. Once the original case was then reopened, if you will, after all those issues were resolved and our clients were found not to be the leadership at that point in time, the tribal claims fell away. And that's why we have the two mirroring amended claims so that we can very carefully point out what survived from the original 1998 filings of the individual property claims that we then supplemented in 2008, a few months or nine months, if I recall correctly, from when the houses were actually bulldozed and our clients were forcibly removed. Well, Mr. Webb, you seem to keep the target moving here, but I think we can still hit it. Isn't it also true that there's a difficulty in that you didn't allege what you started this argument with, that there's no record of transfer of the 04 property to the tribe? You didn't allege that before Judge Block, did you? Yes, we did, Your Honor. Several places. First of all, the original claims have the individual property rights alleged that our usurpatory use of the property that we had beneficial ownership of was infringed. We start with that in 1998. We fully supplement that in 2008, and we then amended those claims to very particularly allege the problems with the deeds. Did you raise this before Judge Block? Yes, Your Honor. In fact, at the government's insistence, the government attaches the 2001 notice in their motion to dismiss. We then pick up upon that in the reply before Judge Block and point out that as of 2001, our claim had already been filed three years prior to that. The 2001 is the total repudiation when they first started. Have you raised with Judge Block the issue of whether the 04 parcel was transferred to the tribe? Yes, and Judge Block has found Show me where you raised that. in the most recent amended complaints that he finds are related back to the 1998 complaint. In fact, at footnote 16, he doesn't just assume for purposes of it, he finds that our amended complaints qualify for a relationship back. Now, one other very important point that I want to get to on reply. Your Honor, Judge Rader, you had pointed out at the record at 429, the memo from the Tribal Operations Office that indicates that parcel 04 has never been recognized as part of the village. Mr. Stockman's reply this morning is to say, well, we need a tribe because we must have documents someplace in the government that shows that there was this transfer. That's why I started with the two presuppositions that evidence Judge Block's error. We didn't have that evidence. Mr. Stockman nor no one else at the government presented that evidence and they did have an opportunity in the opposition, I'm sorry, at the time that they were making their motion to dismiss to try and bring that in in their reply. Do you have any final thoughts here, Mr. Webb? The final thought, Your Honor, is because that evidence is missing, that's why this decision should be reversed and remanded. So that if the government has that such evidence, they get an opportunity to put it on. But in 15 years that my clients have been working on this, we can't find it and none of the Freedom of Information Act requests we made ever turned up anything other than Ms. Fascio's memo at 429 of the record. For those reasons, Your Honor, I think this case should be reversed. Thank you, Mr. Webb. The Court will take a brief recess and then come back as a reconstituted panel.